IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEPHANIE HEMENWAY,

               Plaintiff,

  v.                                             OPINION and ORDER

ROCK COUNTY and                                18-cv-307-jdp
AMY SPODEN,

               Defendants.

---

Plaintiff Stephanie Hemenway, a former deputy at the Rock County Sheriff's Office, is suing the county's HR director, defendant Amy Spoden, under the Family and Medical Leave Act (FMLA), and defendant Rock County under the Americans with Disability Act (ADA). Hemenway alleges that she suffered a disability because of head and knee injuries and needed to take medical leave, but that Spoden denied her leave and that the county failed to accommodate her disability and then terminated her for complaining about it.

Defendants move to dismiss Hemenway's ADA retaliation claim and her FMLA claims.[1] Dkt. 5. They contend that Hemenway has not plausibly alleged facts sufficient to state these claims and that Spoden, as a public agency supervisor, cannot be held individually liable under the FMLA. Defendants also move to strike Hemenway's request for punitive damages and damages for emotional distress and loss of reputation under the FMLA. Hemenway concedes that punitive damages and damages for emotional distress and loss of reputation are not available under the FMLA. Dkt. 13, at 10. So the court will grant that part of defendants'

---

[1] Defendants also moved to dismiss the complaint for lack of service, but that issue was resolved before the parties completed their briefing. Dkt. 16, at 1–2.

motion. But the court will deny the motion as to the underlying FMLA claims and ADA retaliation claim.

ALLEGATIONS OF FACT

The court draws the following facts from Hemenway's complaint, Dkt. 1, and accepts them as true for the purpose of deciding defendants' motion. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

Hemenway was a sheriff's deputy in the Rock County Sheriff's Office. In May 2016, Hemenway was in a "squad accident." Dkt. 1, ¶ 4. Hemenway does not explain what a "squad accident" is, but the exact nature of the accident is not important at this stage. As a result of the accident, she suffered from, and continues to suffer from, concussion-related symptoms. In January 2017, Hemenway was placed on light duty status because she had frequent headaches, memory loss, and sleep deprivation, which made it difficult to complete job tasks.

In February, Hemenway slipped on ice and injured her knee. After a month of recovery, she returned to work in March and continued to work until she underwent knee surgery in April.

Prior to her surgery, Hemenway submitted an FMLA leave form to the county's HR director, defendant Amy Spoden. The form included medical certifications that said that Hemenway could not work for 12 weeks, from April 18, 2017 to July 10, 2017. The certification further indicated that the surgeon would reevaluate Hemenway on July 3 and determine whether she could then return to work.

Hemenway went on FMLA leave. But Spoden ordered Hemenway to return to work prematurely on June 28. Hemenway returned and worked until July 3, when the surgeon

reevaluated Hemenway and told her not to work. After the evaluation, Spoden informed Hemenway that if she did not work, she would no longer receive temporary total disability payments.

Spoden then contacted Hemenway's surgeon to discuss accommodations that the county could provide Hemenway. After this discussion, the surgeon approved Hemenway's return to work. Hemenway did not give prior consent for Spoden to contact her health care provider.

Hemenway returned to work for two days, until a doctor reevaluated her ongoing concussion-related issues. Again, Hemenway's doctor said she could not work. Hemenway met with the chief deputy of the sheriff's office, who told her that she could use sick time and vacation time to take paid leave, so that is what she did.

While on sick leave, Hemenway was still required to fill out weekly time-off requests. But the medication that Hemenway took for her concussion symptoms made her sleepy, and this impeded her ability to fill out the requests. So the county allowed Hemenway to use an administrative assistant to fill out her requests.

Spoden again contacted Hemenway's doctor without prior consent from Hemenway. The doctor sent Spoden paperwork indicating that Hemenway could not work until at least September 13, when she was scheduled for another medical evaluation.

On August 24, Spoden contacted the sheriff's office and told it to send a letter to Hemenway stating that she would be terminated unless she returned to work on August 28. A sergeant at the sheriff's office called Hemenway and told her to return to work. But at that time, Hemenway was in Nashville with her friends. So she asked for a request to take vacation

time. Although the county had previously granted similar requests for other employees, it denied Hemenway's request. Hemenway flew back to Wisconsin and returned to work.

Hemenway worked until August 30, when her doctor again wrote to the county and said that Hemenway could not work until at least September 13. The sheriff's office then launched an internal investigation into Hemenway for various rule violations, including failing to complete time sheets and taking vacation without prior approval. Hemenway complained that she had received approval to have an administrative assistant fill out timesheets, and she told investigators that she was being harassed and discriminated against because of her injuries and their accompanying disabilities. The investigation resulted in Hemenway's termination.

ANALYSIS

Hemenway brings four claims against defendants. She claims that Amy Spoden interfered with her right to take FMLA leave and retaliated against her for exercising her FMLA rights. She claims that Rock County failed to accommodate her disability as required by the ADA and retaliated against her when she complained of ADA violations. Defendants move to dismiss all claims except for the ADA accommodation claim. They contend that Hemenway's FMLA claims fail because Spoden is not an employer within the meaning of the FMLA, and that Hemenway has failed to allege facts sufficient to plausibly state an FMLA claim or an ADA retaliation claim.

The court will deny the motion. The FMLA defines employer broadly, and its plain language states that individual supervisors, including public agency supervisors like Spoden, can be held individually liable. As for whether Hemenway's allegations state a claim,

Hemenway has met her burden to plead facts sufficient to plausibly state claims for retaliation under the ADA and interference and retaliation under the FMLA.

## A. Legal standard on a motion to dismiss

Throughout their briefing, defendants contend that Hemenway's allegations are insufficient to satisfy the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But even after *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 8 requires only that a complaint (1) give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) plausibly suggest that the plaintiff has a right to relief above a speculative level. *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 601–02 (7th Cir. 2016). Although the court is not bound to accept a plaintiff's legal conclusions or conclusory allegations, "[a] complaint that invokes a recognized legal theory . . . and contains plausible allegations on the material issues . . . cannot be dismissed under Rule 12." *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012). The court will review Hemenway's allegations under this standard.

## B. FMLA claims

### 1. Whether Spoden is an employer

Defendants contend that Hemenway cannot assert FMLA claims against Spoden because (1) public officials are not employers under the FMLA; and (2) even if public officials can be held liable under the FMLA, Hemenway has not alleged facts sufficient to show that Spoden was her employer. The court will address each issue in turn.

#### a. Individual liability for public employers

The FMLA's definition of employer is broad and includes a provision extending individual liability to persons acting in the employer's interests. 29 U.S.C. § 2611(4)(A)(ii).

But there is a circuit split regarding whether this provision applies to public agency supervisors like Spoden. The courts of appeals for the Third, Fifth, and Eighth Circuit have held that it does, *Hayharger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012); *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006); *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002), but courts for the Sixth and Eleventh Circuit have held that it does not. *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003); *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999). And although the court of appeals for the Seventh Circuit has implied that public officials can be held individually liable, *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001), it has never ruled on the issue nor discussed it in depth.

Because this is an issue of statutory construction, the court must begin with the language of the statute itself and, if that language is plain, the court enforces it "according to its terms." *In re Crane*, 742 F.3d 702, 708 (7th Cir. 2013) (citing *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir.2004)). The FMLA defines employer as follows:

> (A) In general. The term "employer"--
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes--
>
>> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>>
>> (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the Government Accountability Office and the Library of Congress.

6

29 U.S.C. § 2611(4)(A).

The statute defines employer to include both any public agency, *id.* § 2611(4)(A)(iii), and "any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer." *Id.* § 2611(4)(A)(ii)(I). It is reasonable to infer that any person who acts on behalf of a public agency, as to employees within that public agency, qualifies as an employer.

Defendants ask the court to follow *Mitchell*, which held that § 2611(4)(A)(ii) and § 2611(4)(A)(iii) cannot apply at the same time. 343 F.3d at 829–30. But that reading of the FMLA simply cannot be squared with the plain language of the statute. When Congress drafted the FMLA, it used subsection (4)(A)(i) to establish a base definition for employer, and then expanded that definition in the following sections by stating that it also "includes" subsections (ii)–(iv). *Haybarger*, 667 F.3d at 416 (citing *Modica*, 465 F.3d at 184–85 and quoting 29 U.S.C. § 2611(4)(A)). It did not draft the definition to state that an employer falls under either subsection 4(A)(ii) "or" subsection 4(A)(iii). And because the drafted definition "includes" both public agencies and individual supervisors, "it plainly follows that an individual supervisor at a public agency may be subject to liability." *Id.*

This interpretation is further bolstered by cases construing the definition of employer under the Fair Labor Standards Act (FLSA). The court of appeals for this circuit has recognized that claims can be brought against individual public supervisors under the FLSA. *See Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001) (FLSA allows claims brought against individual public supervisors if not barred by the Eleventh Amendment). In contrast, the two courts of appeals that held that public supervisors cannot be individually liable under the FMLA also had held that public supervisors could not be individually liable under the FLSA. *Wascura*, 169

F.3d at 686 (applying FLSA precedent to FMLA); *Mitchell*, 343 F.3d at 832 ("We note that this Court has never extended individual liability to public employees under the FLSA").

Defendants argue that the court should not apply FLSA case law when construing the FMLA, and they list several ways in which the two acts differ. Dkt. 16, at 5–6. But these differences are irrelevant to the definition of employer, which except for minor structural changes, is substantively the same for both statutes. *Compare* 29 U.S.C. §§ 203(d) *and* 2611(4); *see also* 29 C.F.R. § 825.104(d) (explaining that the FMLA's individual liability provision mirrors the FLSA's definition of employer). "[T]hat Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA." *Haybarger*, 667 F.3d at 414 (quoting *Modica*, 465 F.3d at 186). So Seventh Circuit precedent under the FLSA strongly suggests what the plain language of the FMLA says—that the FMLA imposes individual liability on public agency supervisors.

b. **Hemenway's allegations**

The court now turns to Hemenway's complaint to determine whether her allegations are sufficient to infer that Spoden was indeed her employer. Because of the similarity between the FMLA's and FLSA's definitions of employer, the court applies the "economic reality" test often used in FLSA cases.[2] *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016). The test requires the court to consider a number of factors, including whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee

---

[2] Hemenway contends that the economic reality test does not apply in FMLA cases, but she does not suggest an alternative test apart from restating the language of the statute. Dkt. 13, at 5.

8

work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id*; *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). These factors are not exclusive, and no single factor is dispositive. *Moldenhauer*, 536 F.3d at 644. Rather, they are an aid in answering the ultimate question: whether the alleged employer had "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 789 (N.D. Ill. 2011) (quoting *Riordan v. Kempiners*, 831 F2d 690, 694 (7th Cir. 1987)).

Under this standard, Hemenway has plausibly alleged that Spoden was her employer. She alleges that Spoden reviewed and approved her FMLA leave, Dkt. 1, ¶ 9, ordered her to appear at work, *id.*, ¶ 11, and directed the sheriff's office to terminate her if she did not return to work. *Id.*, ¶ 21. Although Spoden did not make the final decision to terminate Hemenway, *id.*, ¶¶ 25–26, that does not preclude her from being an employer under the FMLA. *See Graziadio*, 817 F.3d at 423–24 (allowing claim against HR director who did not have final termination authority). These allegations make it more than speculative that Spoden had supervisory authority over Hemenway and was at least partially responsible for the alleged FMLA violations.

### 2. Whether Hemenway alleges FMLA claims

Defendants contend that even if Spoden was Hemenway's employer, Hemenway has not alleged an underlying FMLA claim. The court disagrees. Hemenway has successfully pleaded claims for both interference and retaliation under the FMLA and the court will address each in turn. But as an initial matter, the court notes the parties' confusion regarding which provision of the FMLA applies to each of Hemenway's claims.

29 U.S.C. § 2615 contains two provisions that protect an employee's rights under the FMLA. First, under § 2615(a)(1), an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's right to take leave. Second, under § 2615(a)(2), an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. Hemenway says that she is bringing claims against Spoden for "interference" in violation of § 2615(a)(1) and "retaliation" in violation of § 2615(a)(2). But both of Hemenway's claims actually belong under § 2615(a)(1).

Section 2615(a)(2) applies only when an employee experiences retaliation for "opposing" FMLA violations. "Opposition includes things such as filing grievances or making statements against unlawful conduct." *Arrigo v. Link Stop, Inc.*, 975 F. Supp. 2d 976, 987 (W.D. Wis. 2013) (collecting cases). Here, Hemenway does not allege that Spoden retaliated against her because she complained about defendants' illegal practices; she alleges that Spoden retaliated against her because she took FMLA leave.[3] Dkt. 1, ¶¶ 43–44. That type of retaliation falls under § 2615(a)(1). *See Simpson v. Office of Chief Judge of Circuit Court of Will Cty.*, 559 F.3d 706, 712 (7th Cir. 2009); 29 C.F.R. § 825.220 (explaining that the FMLA's prohibition on interference prohibits an employer from retaliating against employees that take FMLA leave).

So Hemenway cited the wrong provision for her FMLA retaliation claim.[4] But this mistake does not warrant dismissal, because a plaintiff cannot plead herself out of court by

---

[3] In her brief in opposition, Hemenway says that she "opposed" Spoden's decisionmaking by getting evaluated by a doctor. Dkt. 13, at 7. But that is not the same thing as filing a grievance or voicing opposition to FMLA violations. Instead, it is a step that Hemenway took while trying to invoke her right to take leave.

[4] Hemenway's mistake is understandable, as several cases have suggested, without analysis, that all retaliation claims fall under § 2615(a)(2). *See Perry v. Bath & Body Works, LLC*, 993 F. Supp.

citing the wrong legal authority. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 543 (7th Cir. 2018). "Even citing the wrong statute needn't be a fatal mistake." *Id.* (quoting *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010)). What matters is whether Hemenway has alleged the facts necessary to plausibly state a claim for relief. The court will look at the allegations underlying each of Hemenway's FMLA claims.

a. **Interference claim**

Hemenway's first claim is for interference. To prevail on an FMLA interference claim, a plaintiff must establish: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Ames v. Home Depot U.S.A, Inc.*, 629 F.3d 665, 668–69 (7th Cir. 2011).

Hemenway has alleged facts sufficient to state a claim for interference. The FMLA gives an employee with a serious health condition the right to take up to 12 weeks of leave during any 12-month period. 29 U.S.C. § 2612(a)(1)(D). Hemenway says that she had serious injuries from a car accident and from a fall on ice. Dkt. 1, ¶¶ 4–7. When she underwent surgery, she applied for and received 12 weeks of FMLA leave. *Id.*, ¶ 9. But while Hemenway was on FMLA leave, Spoden ordered her to return to work. *Id.*, ¶ 11. This is a clear description of an interference claim.

Defendants do not argue that the above allegations are insufficient. Instead, they focus on Hemenway's allegations that Spoden contacted her doctors without prior consent, and

---

2d 883, 899 n.6 (N.D. Ind. 2014) (collecting cases and explaining the confusion between the two provisions). But even cases that nominally apply § 2615(a)(2) to claims like Hemenway's have nonetheless analyzed the claims under the framework previously established under § 2615(a)(1). *See id.*

defendants argue that *those* allegations don't state a claim. But Hemenway says that is not the basis for her interference claim. She does not contest that Spoden was allowed to contact her doctors—she contends that Spoden violated the FMLA by ordering her back to work while on FMLA leave. Dkt. 13, at 6–7. And that is indeed a basis for an FMLA claim.

   b. **Retaliation claim**

Hemenway's second claim is for retaliation. To state an FMLA retaliation claim, Hemenway must allege that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *See Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015); *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012).

Hemenway has alleged facts sufficient to state a claim for retaliation. She says that she engaged in protected activity by taking FMLA leave. Dkt. 1, ¶ 9. When she completed her FMLA leave, she still had medical issues, so she talked with a supervisor about using sick time and vacation time to remain on paid leave. *Id.*, ¶ 16. Even though Hemenway received approval to take sick leave and had a doctor's note indicating that she was unable to work, *id.* ¶ 19, Spoden demanded that she return to work or face termination. *Id.*, ¶ 21. After her return, Hemenway was investigated and eventually terminated. *Id.*, ¶¶ 24–26.

 Under these facts, it is plausible that Spoden retaliated against Hemenway for taking FMLA leave. Her allegations suggest that she suffered an adverse employment action when Spoden denied the use of sick time and started the process of terminating Hemenway, and that Spoden did this because Hemenway had previously used FMLA leave. That is enough to nudge her claim beyond the realm of mere speculation, and that is all that is required at the pleading stage.

## C. ADA retaliation claim

Defendants also move to dismiss Hemenway's claim for ADA retaliation. Like the FMLA, the ADA prohibits employers from discriminating against any individual because she has "opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203. To state a claim for retaliation under the ADA, a plaintiff must allege facts showing that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) there was a causal connection between the two. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001).

Hemenway has plausibly alleged that she was terminated, at least in part, because she complained about ADA violations. Under the ADA, employers are required to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee. 42 U.S.C. § 12112(b)(5)(A). Hemenway alleges that she had a disability that made her unable to fill out time sheets, but that the county accommodated her disability by allowing an administrative assistant to fill out her time sheets. Dkt. 1, ¶¶ 18, 20, 24. But when the sheriff's office placed Hemenway under investigation, they said that the accommodation was actually a rule violation. *Id.* ¶ 24. Hemenway complained to the investigators that they were discriminating against her and that she was being disciplined for using an accommodation. *Id.* ¶¶ 34–35. After the investigation, Hemenway was terminated. *Id.*, ¶¶ 25–26.

Hemenway's allegations are sufficient to put defendants on notice regarding the basis for her claim, and they are sufficent to raise her claims above the level of speculation. The court will deny defendants' motion to dismiss as to Hemenway's ADA retaliation claim.

ORDER

IT IS ORDERED that defendants Rock County and Amy Spoden's motion to dismiss, Dkt. 5, is GRANTED as to plaintiff Stephanie Hemenway's request for punitive damages and damages for emotional distress and loss of reputation under the FMLA, and that request is STRUCK from the complaint. The motion is DENIED as to Hemenway's claims for interference and retaliation under the Family and Medical Leave Act and claim for retaliation under the Americans with Disability Act.

Entered November 19, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge